UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at KNOXVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 3:22-cr-118 |
| v. | ) | District Judge Varlan |
| | ) | |
| EDWARD KELLEY | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL**

On December 4, 2024, the defendant renewed his motion for judgment of acquittal, challenging the sufficiency of the evidence adduced at trial per Fed. R. Crim. P. 29. (Doc. 90). The defendant further moved the Court for a new trial pursuant to Fed. R. Crim. P. 33. The Court should deny the motion on the grounds it has previously articulated.

*I.     Legal Standards*

When reviewing the sufficiency of the evidence in the context of a Rule 29 motion, the Court assesses "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wallace*, 597 F.3d 794, 800 (6th Cir. 2010) (emphasis original, quotation omitted).

As charged to the jury with the parties' consent, the elements of the crimes the defendant committed are as follows.

**Count One: Conspiracy to Murder Employees of the United States**

- Two or more persons conspired, or agreed, to commit the crime of murder of officers or employees of the United States;

- The defendant knowingly and voluntarily joined the conspiracy; and

- A member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

### Count Two: Solicitation to Commit a Crime of Violence

- The defendant intentionally solicited, commanded, induced, or otherwise tried to persuade another person to engage in conduct;

- That conduct constituted a federal felony that had as an element the use, attempted use, or threatened use of physical force against property or against another individual, specifically, murder of officers and employees of the United States; and

- The defendant's intent that another person engage in such conduct must be strongly corroborated by the circumstances.

### Count Three: Influencing Federal Officials by Threat

- The defendant threatened to assault and murder federal law enforcement officers;

- The individuals were federal law enforcement officers; and

- The defendant did so with the intent to impede, intimidate, or interfere with such law enforcement officers while the officer was engaged in the performance of official duties.

A defendant claiming insufficiency of evidence "bears a very heavy burden . . . ." *United States v. Iossifov*, 45 F.4th 899, 915 (6th Cir. 2022) (quotation omitted). All reasonable inferences must be made to support the jury verdict, and the Court may not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* (quotation omitted).

The defendant alternatively moves for a new trial pursuant to Fed. R. Crim. P. 33. "Upon the defendant's motion, the [C]ourt may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). This Court has recently summarized the standards by which a Rule 33 motion should be analyzed:

> "Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373

> (6th Cir. 2010). A Rule 33(a) motion "may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). But such motions should be granted only "in the extraordinary circumstances where the evidence preponderates heavily against the verdict," *id.* (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979)), or, in other words, "when the verdict exceeds the bounds of reasonableness." *United States v. Burks*, 974 F.3d 622, 625 (6th Cir. 2020). As the Sixth Circuit explained: "On the one hand, [the court] must scrutinize the record and ensure that a 'miscarriage of justice' did not occur. On the other hand, the court must respect the role of the jury and ensure that evidence-supported convictions are upheld." *Id.* (quoting *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)).
>
> In contrast to a Rule 29 motion, a district judge considering a Rule 33 motion "can act in the role of a 'thirteenth juror' and consider the credibility of the witnesses and the weight of the evidence." *Lutz*, 154 F.3d at 589. However, the court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Burks*, 974 F.3d at 625 (quoting *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004)). "The decision whether to grant a new trial is left to the sound discretion of the district court ...." *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008) (quoting *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995)). The defendant bears the burden of proving that a new trial should be granted under Rule 33. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994) (citing *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991)).

*United States v. Glatz*, 2024 WL 3933858, E.D. Tenn. Case No. 3:19-cr-218 (Aug. 23, 2024).

Rule 33 motions for new trials "'should be granted sparingly and with caution.'" *United States v. Stewart*, 5 F. App'x 402, 407 (6th Cir. 2001) (citing *United States v. Turner*, 995 F.2d 1357, 1364 (6th Cir. 1993)).

In essence, the defendant reasserts arguments he made in connection with a Rule 29 motion made following the close of the Government's case at trial and following the close of all proof at trial. The Court denied that motion previously, and it should again deny it here on the same grounds.

For the sake of clarity and brevity, the United States respectfully relies on and reincorporates here the responses it offered to the defendant's Rule 29 motion when it was

originally made. The Court should deny this renewed and modified motion on the same grounds, and the Government's non-exhaustive response follows.

As the jury's verdict confirms, the proof at trial was sufficient to sustain a conviction for each of the three counts with which the defendant is charged. Further, no injustice occurred as a result of this trial, such that a new trial would be merited. The Court should not disturb the jury's verdict.

II.     Analysis

    A.     <u>Count One: Conspiracy to Murder Employees of the United States</u>

The record is replete with evidence that the defendant conspired to murder federal agents. The thrust of the defendant's argument to the contrary is that (a) there was no agreement or common plan between the defendant and Austin Carter to murder federal employees, and (b) the United States failed to prove an overt act in furtherance of such plan. The United States submits that the jury and the Court have rightly and reasonably rejected this position, and the Court should once again reject it now.

The proof adduced at trial demonstrates that the defendant and at least one other person entered into a common plan and agreement to murder federal officials. Beginning in 2022, the defendant affiliated with Austin Carter and – at least notionally – Christopher Roddy in a self-styled "militia." The group coordinated by way of an encrypted messaging application, discussing protocols for "when [expletive] hit the fan" and other contingencies related to a civil war that the defendant believed was imminent. In anticipation of such events – which Austin Carter testified implicitly included attacks on FBI personnel – they identified rally points and conducted training, close-quarter combat drills, immediate action exercises, and other preparatory activities.

Austin Carter and Christopher Roddy both testified as to the nature and scope of the conspiracy, as well as the defendant's enthusiastic participation and leadership. As Carter testified without equivocation, he and the defendant jointly intended to murder FBI agents. Their plan was not a nebulous one. Trial testimony established that the defendant believed that the group should be "offensive" in nature and conduct preemptive strikes to "take out the eyes and ears" of the perceived enemy, i.e., the FBI. The defendant assigned roles and "missions" in furtherance of his planned attacks. He strategized about various and effective ways to realize his murder plot: attack FBI agents from long range, use drones to breach the FBI facility's perimeter, drive a car bomb into the fence near the FBI office, murder FBI agents in public places like movie theaters.

Additionally, recorded calls demonstrate that there was indeed an agreement between at least the defendant and Carter, and its purpose was to kill federal officials. The defendant dictated a "course of action" in the event of his arrest (which he correctly believed was imminent): recruit as many people as possible and attack the FBI in Knoxville. The defendant promised reciprocity, as well; he would attack were any of his co-conspirators to be arrested. After the defendant issued his attack command, Carter and Roddy had a conversation in which Carter confirmed the existence of the conspiracy and said that he had been "in on this … for quite a minute now."

Throughout, the defendant's knowing and voluntary participation in the conspiracy was manifest. Among many other things, the jury saw evidence and testimony establishing that he devised and doled out surveillance and attack assignments, he organized a "hornet's nest" at which he could store weapons, he identified the targets to be assassinated, he dictated the "mission" to kill individuals on "the list" he created, and he gave the go-ahead order to attack.

The evidence firmly established that the defendant not only participated in the conspiracy; he was its leader and the driving engine behind its movement.

Finally, the evidence demonstrated that conspirators took a number of overt acts in furtherance of the defendant's plan, including – but by no means limited to – those that were spelled out in the indictment. Testimony and other evidence introduced at trial proved each of the overt acts set forth in the indictment:

- Carter and Roddy each testified to meeting the defendant on or about December 3, 2022, at Jarvis Park, at which time the defendant discussed plans to surveil and attack FBI agents;

- Each also testified – as corroborated by recorded calls – that, on or about December 13, 2022, Carter delivered the defendant's kill list to Roddy and instructed Roddy to memorize and secrete or destroy the list;

- In a recorded call on or about December 14, 2022, the defendant told Roddy of his plans and asked to store firearms and ammunition at Roddy's house, so that the firearms would be in "arm's reach"; and

- Carter testified that, on or about December 14, 2022, he and the defendant discussed plans to attack the then-Field-Office of the FBI in Knoxville, Tennessee, in a manner similar to a recorded call the defendant had with Roddy on the same date.

Each of these overt acts was specified in the indictment. Now, after trial, each is a proven matter of record before the Court. Any one of them is enough to sustain the jury's verdict.

But beyond these, the defendant and Carter took a number of other overt acts sufficient to sustain the conspiracy charge. *See, e.g.*, *United States v. Stone*, 323 F. Supp. 2d 886, 893-94 (E.D. Tenn. July 8, 2004) ("[T]he jury is not limited to considering just the alleged overt acts in reaching its determination of the existence of an overt act in furtherance of the conspiracy."). Signal chats and testimony showed that, throughout late November and early December 2022, the defendant and others strategized and coordinated the attacks, drilling, training, and planning to make them a reality. The defendant created a list of FBI targets to be killed, which was itself

introduced into evidence, and which was the object of considerable testimony. Though the indictment in this case charges Carter's provision of the list to Roddy as an overt act, the defendant's provision of the list to Carter is separately sufficient. Finally – correctly anticipating his impending arrest – the defendant gave the go-ahead order to "start it" and attack the FBI. As the United States noted at trial, were the defendant's plans to have been successful, this would have been the last overt act he would have been required to take before violence erupted.

Ultimately, as to Count One, each of the elements of the offense was proven beyond a reasonable doubt. The jury's verdict is reasonable and well supported, and the Court should not set it aside pursuant to either Rule 29 or Rule 33.

B. Solicitation to Commit a Crime of Violence

The evidence at trial further demonstrated that the defendant solicited the murder of federal employees. Though the defendant now contends that this was merely "talking," the evidence is strongly corroborative of his intent to enlist the help of both Roddy and Carter in his plan to kill FBI agents and employees.

As a threshold matter, the defendant does not contest that the second element of this offense was proven. That is, he makes no argument that murdering federal officials is not a federal felony that has as an element the use, attempted use, or threatened use of physical force against another.[1] Accordingly, the question now before the Court is whether it should grant a

---

[1] Even if he had made such an argument, the United States Court of Appeals for the Sixth Circuit has addressed 18 U.S.C. §§ 1111 and 1114 in the context of a case relating to certain terrorism offenses and whether federal murder is a "crime of violence." *See In re Amawi*, 780 F. App'x 301 (6th Cir. 2019). In brief and in context, to be a "crime of violence," a crime necessarily would have "as an element the use, attempted use, or threatened use of physical force against the person or property of another," i.e., the same definition provided in Count Two of this case. In *Amawi*, the Sixth Circuit noted that "it cannot be seriously argued that murder is anything other than a crime of violence," quoting, among other things, *United States v. Darden*, 346 F. Supp. 3d 1096 (M.D. Tenn. 2018), which collected cases on that score. *See Amawi*, 780 F. App'x at 306.

new trial or overturn the jury's finding that the defendant solicited the murder of federal employees under circumstances strongly corroborative of his intent.

At trial, both Carter and Roddy recounted the various instances in which the defendant endeavored to induce their participation in his plan to murder federal officials. Both testified that, during the dates charged in the indictment, the defendant continued to devise the attacks, assigned them missions, and distributed the kill list.

Notably, in Government's Exhibit 9, the jury heard a specific instance of the defendant committing the crime charged in Count Two. During that recorded call about the attack on the FBI Knoxville office, the defendant, among other things:

- Told Roddy that he had just sent Carter a message and then explained to Roddy "our course of action";

- Directed Roddy, "if I'm extradited to DC or you don't hear about my status within 24 or 48 hours . . . start it. You guys are taking out their office."

- Said that "what you and Austin need to do" is recruit as many people as possible before the attack;

- Told Roddy to "call who you can, who you need to, and you're going to attack their office";

- Explained to Roddy that "you don't have time to train or coordinate, but every hit has to hurt. Every hit has to hurt";

- Elaborated that, in the event he ran into "anyone else that wants to do harm to January 6 defendants," he would "kill them where they stand," but he "might need you on call for back up," and that "I'll probably have to call you off work . . . drive as fast as you can down Maryville Pike as safe as you can and get to my area."

Even if the Court were to disregard all the other testimony and evidence concerning the defendant's efforts to persuade Roddy and Carter to take part in his plot (which it should not do), Government's Exhibit 9 alone proves this charge beyond a reasonable doubt. That call contains

multiple instances of the defendant soliciting, commanding, and inducing another person to violence, specifically, to the murder of federal employees.

The circumstances attendant to these solicitations profoundly corroborates the defendant's intent.

The defendant's intent can be inferred from his tone of voice in the recorded calls. It can be drawn from his monthslong training, strategizing, and drilling in furtherance of his plan to attack. It is found in the call to Roddy, in which he said he was traveling to Athens on Christmas Eve to pick up weapons and ammunition to have within "arms' reach if things are getting the way I fear that they are." These weapons and ammunition would expand on the access he had to materials and information about explosives and other instruments of death. Most profoundly, the defendant's intent is made plain by the time he took to identify and memorialize a list of federal agents to be killed in his plan – a list he then distributed to his co-conspirator as part of the "mission" he assigned. Trial testimony showed that all of these circumstances are built upon the foundation of the defendant's repeated solicitations to commit this offense and his evident seriousness in his commitment to its completion.

The evidence submitted to the jury makes it clear that the defendant fully intended to engage Carter and Roddy as his assistants in carrying out his attack. His solicitations to violence were explicit, overt, and genuine. As a result, the jury's finding as to Count Two is supported by substantial evidence, and no manifest injustice requires redress by way of a new trial.

C. <u>Count Three: Influencing Federal Official by Threat</u>

The defendant threatened to attack and kill FBI agents and employees. Though the defendant frames his statements in the context of "free speech," courts have long recognized that true threats fall outside the protection of the First Amendment because they place the recipient in

"fear of violence" and lead to "the disruption that fear engenders." *Virginia v. Black*, 538 U.S. 343, 360 (2003). As the Court is aware, and as it correctly instructed the jury based on the authority presented at the charge conference and noted in the Sixth Circuit Pattern Jury Instructions, a "threat" in this context is a serious expression of an intent to do bodily harm. It is a statement that a reasonable observer would perceive as an authentic true threat, and that the defendant subjectively understood to be – or recklessly disregarded a substantial risk would be viewed as – threatening. *Counterman v. Colorado*, 600 U.S. 66 (2023).

In this case, the defendant created a kill list of individualized targets. He and his co-conspirators set about on a plan to realize the murders. And on December 14, 2022, he called and told his cohort to "start it." In his call, he instructed Christopher Roddy to attack the Knoxville FBI office in the event of his forthcoming arrest. He told Roddy and, separately, Carter how to conduct the attacks and where.

This was a serious threat. The recorded calls and tendered evidence capture the defendant's sincerity. Observers ranging from Roddy to Carter to the institutional FBI to the individuals on the list took the threat seriously. The jury – exercising its role as fact finder and arbiter of credibility – deemed testimony as to this fact credible, and it concluded that the threat was serious, as well.

The defendant's statements are definitive and require no further discernment. He plainly manifested his explicit desire to do bodily harm, repeating: "Every hit has to hurt." The United States submits that there is substantial proof from which the jury concluded that the defendant subjectively understood the threatening nature of his statements – or, at the very least, recklessly disregarded as a substantial possibility that a listener would take them as such.

The jury's verdict as to Count Three is supported by substantial proof and does not represent a miscarriage of justice. Accordingly, the Court should overrule the defendant's motion as to Count Three.[2]

III. Conclusion

Each of the defendant's three counts of conviction is firmly rooted in evidence presented at trial. A reasonable factfinder could – and did – conclude beyond a reasonable doubt that the defendant conspired to murder federal agents; solicited a violent crime; and unlawfully threatened federal officers. The defendant has failed to meet the heavy burden of establishing his entitlement to relief pursuant to Fed. R. Crim. P. 29. Further, because this is not an "extraordinary circumstance" in which the evidence preponderates heavily against the verdict, a new trial is not appropriate pursuant to Fed. R. Crim. P. 33.

---

[2] The defendant does not appear to argue that the jury's verdict is unsupported as to the second and third elements of Count Three, i.e., that the threatened individuals were federal law enforcement officers and that the threats were made on account of their official duties. Understandably so. FBI agents and employees are federal law enforcement officials, and the record contains significant evidence from which to conclude that the defendant's threats were deliberately designed to impede and in retaliation for the performance of their duties. As just one example, testimony established that the defendant viewed the FBI as the "eyes and ears" of "the enemy" and was prepared to attack them preemptively in order to impair the federal government's ability to function in the defendant's perceived "civil war." Additional testimony established, for example, that the defendant's kill list was exclusively composed of individuals who participated in the investigation, search, and arrest of him for his conduct attendant to the January 6, 2021, Capitol Riots.

The Court should deny the defendant's motion.

Respectfully submitted this 20th day of December 2024,

        FRANCIS M. HAMILTON III
        UNITED STATES ATTORNEY

By:   */s/ Casey T. Arrowood*
      */s/ Kyle J. Wilson*
      Casey T. Arrowood
      Kyle J. Wilson
      Assistant United States Attorneys
      TN BPR No. 038225
      TN BPR No. 031844
      800 Market Street, Suite 211
      Knoxville, TN 37902
      (865) 545-4167
      Kyle.Wilson@usdoj.gov
      Casey.Arrowood2@usdoj.gov