UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDWARD KELLEY | No. 3:22-CR-118<br><br>Judge Varlan |

## UNITED STATES' SENTENCING MEMORANDUM

In December 2022, Edward Kelley developed a plan to murder federal, state, and local law enforcement in East Tennessee. Kelley created a list of specific people he intended to assassinate, including agents, officers, and employees of the FBI, Tennessee Bureau of Investigation, Tennessee Highway Patrol, Maryville Police Department, Blount County Sheriff's Office, and Clinton Police Department. To effectuate his plan, Kelley sought the assistance of others to identify his victims' pattern of life and to murder them at their offices, homes, and in public places.

Kelley and his coconspirator also made plans to attack the FBI office in Knoxville using improvised explosive devices attached to vehicles and drones. It was this part of the plan that Kelley actioned on December 14, 2022. Believing he was about to be arrested, Kelley initiated his attack plan by instructing, "Start it. You guys are taking out their office."

Edward Kelley is remorseless and has shown neither a capacity nor desire to rehabilitate. On the contrary, Kelley not only believes the actions for which he was convicted were justified but that his duty as a self-styled "patriot" compelled him to target East Tennessee law enforcement for assassination.

The only sentence sufficient to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a)(2) is the Sentencing Guidelines-recommended sentence of life in prison. The United States respectfully recommends the Court sentence Edward Kelley accordingly.[1]

## BACKGROUND

On December 21, 2022, a Grand Jury of the Eastern District of Tennessee returned an Indictment against the Defendant and Austin Carter. (Doc. 17). The Indictment charged Kelley and Carter with conspiracy to murder employees of the United States. The Indictment further charged Kelley with solicitation to commit a crime of violence and influencing federal officials by threat. Kelley elected to try his case before a jury of this Court. On November 20, 2024, the jury returned a guilty verdict as to all counts. (Doc. 85).

On April 8, 2025, the United States Probation Office filed a revised presentence investigation report (Doc. 113, hereafter "PSR"). On June 6, 2025, the Defendant filed objections to the PSR, (Doc. 123), to which the United States responded on June 13, 2025, (Doc. 125).

---

[1] For the sake of clarity, this memorandum refers to documents filed on the Court's electronic record by document number and intra-document page number provided by the Court's electronic case filing system. It refers to the United States' trial exhibits using the abbreviated identifier "GX," followed by the exhibit number as logged in the Court's jury evidence review system and page number assigned by that system, e.g., "GX 2" being the Defendant's "list" and "GX 1 at 4" being the fourth page of the "Be Prepared" Signal chat transcript.

For the Court's reference, Doc. 87 in the Court's electronic record contains a list of each trial exhibit, followed by a textual description of that exhibit.

Finally, the memorandum will refer to any exhibits not admitted at trial but tendered for sentencing purposes as "GSX," followed by a numerical identifier. Via separate medium, the United States will submit to the Court and defense counsel copies of these exhibits.

Based upon a total offense level of 43 and a Criminal History Category of VI, the Defendant faces a Sentencing Guidelines range of life in prison.[2] Given the pertinent statutory considerations at 18 U.S.C. § 3553(a), any variance or departure from the Defendant's Sentencing Guidelines range is unwarranted. Accordingly, the Court should sentence the Defendant to life in prison.

## ANALYSIS

As the Court is aware, the Court's sentencing analysis is governed by 18 U.S.C. § 3553(a), which requires consideration of several factors including the nature and circumstances of the offense as well as the defendant's history and characteristics. 18 U.S.C. § 3553(a)(1). Upon consideration of all relevant factors, the Court is to fashion a sentence that is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote the rule of law, provide just punishment for the offense, afford adequate deterrence, and to protect the public from further crimes of the defendant. Consideration of these factors in this case supports the Sentencing Guidelines-recommended sentence.

### I. *The Offense Conduct Merits a Guidelines Sentence.*

Edward Kelley's criminal conduct is unquestionably serious. In 2022, the Defendant, with Austin Carter's assistance, devised a plan to murder federal, state, and local law enforcement personnel in East Tennessee. The plan included targeting specific individuals for assassination identified by Kelley on a list he created and distributed to Carter. The plan also included attacking the FBI office in Knoxville with various iterations of improvised explosive devices.

---

[2] The Sentencing Guidelines range measurably underrepresents the nature and severity of the Defendant's criminal conduct. As calculated by the PSR, the Defendant's offense level is 55. (PSR ¶55). However, "in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43." (*Id*. at ¶58).

3

Motivated by a desire to initiate a civil war and to retaliate for his previous arrest, Kelley was committed to executing his plan. The evidence presented at trial showed that in October 2022, Kelley, Carter, and Christopher Roddy were part of a chat group named "Be Prepared" on Signal, an encrypted messaging platform. In the chat group, Kelley discussed establishing rally points, meeting locations to conduct close quarters battle training ("CQB"), and immediate action drills, all in preparation for an anticipated civil war. (*See* GX 1).

Kelley also discussed his plans during in-person meetings in late 2022. At trial, Carter testified that he met Kelley at Kelley's house to conduct CQB training in November 2022. During that meeting, they discussed plans to kill FBI agents and attack the FBI office – which included the use of improvised explosive devices inside of vehicles and incendiary devices attached to drones.

Roddy testified that he met Kelley and Carter at Jarvis Park in Maryville on December 3, 2022. During that meeting, Kelley inquired about the types of weapons Roddy owned (an AR-15 with a red-dot scope), discussed conducting assassination missions, and stated he had a list of people to target including "that bitch, Mann," a reference to FBI Special Agent Jessi Mann.

The gravity of the conspiracy is further underscored by the recorded calls that were introduced at trial. In calls recorded over a brief 30-hour period, the Defendant discussed implementing countersurveillance measures (GX 6, 8), establishing a "course of action" (GX 7), "kicking up training and coordinating" (*Id.*), conducing immediate action drills (*Id.*), developing a "scheme maneuver" (*Id.*), creating a secure communications plan (GX 9), and building a "hornet's nest" in Athens, Tennessee (*Id.*).

The Defendant did not simply talk about his plan. The evidence in the case is replete with examples of the Defendant taking action to implement his planned attack on East Tennessee law enforcement. The Defendant identified rally points, conducted CQB training and immediate action

4

Case 3:22-cr-00118-TAV-JEM    Document 127    Filed 06/17/25    Page 4 of 12
PageID #: 1102

drills, distributed weapons qualifications standards, and assigned roles and missions as part of his plan. Kelley also directed the execution of his "course of action" in the event of his arrest or the arrest of the others in their self-styled militia – attack the FBI office in Knoxville: "You don't have time to train or coordinate, but every hit has to hurt. Every hit has to hurt." (GX 9).

The Defendant also took steps to access weapons and ammunition. Although he claims to have gifted his weapons and ammunition to a friend, the evidence in the case makes clear his effort to ensure access to his arsenal in order to effectuate his plan. In a recorded call, Kelley informed Roddy that Kelley planned to store "weapons and ammo" at Roddy's home because Kelley needed them "in arms' reach if things are getting the way [he] fears they are." (GX 8). Although the Defendant suggested the volume of weapons is "not too many," as the jury saw, they were certainly sufficient to inflict significant damage.



5



Perhaps most notably, the Defendant identified 36 individual federal, state, and local law enforcement personnel to target for assassination. He created a list of his targets which included names, titles, and cell phone numbers. (GX 2R). And he distributed copies of his kill list to Carter and Roddy, identifying it as their first "mission." The "mission" packet also included a USB drive containing video images of law enforcement personnel taken during the search of Kelley's home in May 2022. (GX 3, 30).

The seriousness of the offense is further highlighted by Kelley's motivations for targeting law enforcement. The proof at trial established that Kelley targeted law enforcement because of their anticipated role in the civil war that Kelley hoped to initiate and because of his animus towards those who participated in his May 2022 arrest and search of his home. Carter testified that Kelley

6

Case 3:22-cr-00118-TAV-JEM   Document 127   Filed 06/17/25   Page 6 of 12
PageID #: 1104

viewed the FBI as the enemy and, as such, were valid targets in the civil war because they served as the "eyes and ears" of the government.

Carter and Roddy both testified that Kelley was clear in his desire to retaliate against law enforcement for his May 2022 arrest. For example, Roddy testified about Kelley's desire to retaliate against "that bitch, Mann," again, a reference to FBI Special Agent Jessi Mann. Perhaps the clearest indication of Kelley's retaliatory intent is the kill list that he created. At trial, Special Agent Mann testified that the 36 federal, state, and local law enforcement officers identified on Kelley's kill list were all involved in either the arrest of the Defendant or the search of the Defendant's home in May 2022. The evidence on this point is clear, Kelley targeted law enforcement for assassination on account of the performance of their official duties—both past and future.

While Kelley's conduct on its own is unquestionably serious, the fact that he was targeting law enforcement on account of the performance of their official duties underscores the acute need for the sentence imposed to promote respect for the rule of law. The public servants he targeted were identified on his list because they participated in a court-authorized search and a court-authorized arrest. In addition, once he believed he was going to be arrested – a necessary function performed by law enforcement officers executing court-authorized arrests – he gave the order to his cohorts to attack the FBI office in Knoxville. The Defendant's conduct in this case manifests his abiding disrespect for the rule of law.

A Guidelines sentence reflects the seriousness of the offense and is necessary to provide just punishment. Kelley was planning to murder law enforcement. He recruited others to his cause; he led and organized training to support his cause; he sought access to weapons to carry out his plans; and he identified targets to be killed. Both Carter and Roddy testified that Kelley was serious about his plans. Carter's testimony was unequivocal – he had no doubts that, had he and Kelley not been

7

arrested, the law enforcement personnel included on Kelley's list would have been murdered. The nature and circumstances of Kelley's offenses are undisputably serious and warrant a life sentence.

## II. *The Defendant's History & Characteristics Merit a Guidelines Sentence.*

Kelley's history and characteristics as revealed through the nature and circumstances of the offense conduct described above combined with his continuing justification of his criminal conduct underscore the propriety of a Guidelines sentence.[3]

The Defendant is remorseless. From even before the instant offenses of conviction, through his commission of these crimes, up until and after trial, the Defendant's conduct demonstrates a fundamental absence of remorse, a commitment to continuing his criminal behavior once released from prison, disrespect for the rule of law, and a profound need for deterrence.

Even while in the custody of the United States, the Defendant justified the actions for which he was convicted. In a recorded call on November 21, 2024, between the Defendant and P.D., Kelley stated, "No, I'm here unjustly man. I'm a patriot and I'm never ever going to apologize for trying to keep your family safe. Sometimes there's casualties. I'm one of them." (GSX 2).

Beyond merely failing to accept responsibility for his own criminal conduct, the Defendant affirmatively believes he is the victim of a crime apparently committed by the FBI, the United States, the trial witnesses, the jury, and this Court. Rather than evince a desire to rehabilitate himself, he appears proud of his crimes. During a February 11, 2025 call with J.L., the Defendant

---

[3] On November 7, 2024, the Defendant was found guilty in the District of Columbia of various crimes in *United States v. Edward Kelley*, Case No. 1:22-CR-408, Doc. 84 (D.D.C. Nov. 7, 2024) (hereafter, "D.C. Case"). On January 20, 2025, pursuant to a Presidential Proclamation, the U.S. Attorney's Office moved to dismiss the D.C. Case, and that motion was granted. (*See* D.C. Case, Docs. 87, 88). To be clear, the United States is not asking the Court to consider the Defendant's D.C. Case in reaching the sentence in this case. However, irrespective of whether the Court considers the D.C. Case at sentencing, the United States respectfully recommends this Court impose the Guidelines-recommended sentence of life in prison.

8

stated: "The injustice needs to end. I was wrongfully accused, wrongfully convicted and every second I'm in jail is a crime not just against myself but of the American people and all that is good." (GSX 3).

The Defendant has also directed his ire towards the members of the public who served on the jury in this case. During a call with J.J. on March 8, 2025, Kelley stated, "That jury, if they weren't coerced in some way, then they're just fucking idiots. They're uninformed idiots." (GSX 4).

These calls not only illuminate the Defendant's lack of remorse and disrespect for the rule of law, but they also reveal his abiding view that he was duty-bound to murder law enforcement. At several points during the aforementioned call with P.D., the Defendant equates his conduct with that of the colonists during the American Revolution, going so far as to say during a March 15, 2025, call with B.B.: "I mean the fact of the matter is people want to eat their steak, but they don't want to see how the cow is slaughtered." (GSX 5).

These calls demonstrate the paramount need for the sentence imposed in this case to afford adequate deterrence and to protect the public from further crimes of the Defendant. Motivated by his desire to initiate a civil war and to retaliate against law enforcement for performing their official duties – i.e., his May 2022 arrest – the Defendant devised a plan to murder East Tennessee law enforcement personnel and took a number of concrete steps to make that plan a reality.

Since then, the Defendant was arrested again, indicted by a Grand Jury in the Eastern District of Tennessee, detained pending trial, faced trial, and was found guilty by an East Tennessee trial jury. He now faces sentencing by this Court on July 2, 2025. And yet the Defendant continues to believe in the righteousness of his cause, a sentiment that has been tempered neither by the two and half years he has spent in prison nor by the jury's guilty verdict. Accordingly, to adequately deter the Defendant and protect the public – including and especially the public servants identified

9

on the Defendant's kill list (GX 2R) – this Court should sentence Edward Kelley to the Guidelines-recommended term of life in prison.

Additionally, the Defendant's history reveals a proclivity for possessing and viewing child pornography. This aspect of the Defendant's history informs considerations such as the need to protect the public from further crimes of the Defendant, as well as the need for incapacitation and rehabilitation. Accordingly, the Court should impose the attendant PSR-recommended conditions of supervision and consider this factor in determining whether to vary from the Guidelines-recommended sentence.

When the Defendant was arrested on December 15, 2022, law enforcement personnel seized and searched the Defendant's electronic devices, including a laptop computer. The results of the forensic examination of the Defendant's laptop revealed that he possessed and viewed child sexual abuse material ("CSAM" or "child pornography") for years. (*See* GSX 1).

The examination of the laptop revealed multiple carved[4] images consistent with CSAM. (*Id.* at 5). The images are part of six separate CSAM series featuring both clothed and naked children.[5] (*Id.*)

While Kelley's possession of the child pornography images found on his laptop is serious, Kelley's penchant for CSAM was far more prolific. Between 2020 and 2022, the Defendant accessed at least 113 known folders with names consistent with CSAM. (*Id.* at 1). The folder names are revealing, for example: "Katie_model_vinyljumper_teenmodeling_tv;" "Ginger

---

[4] A "carved" file is the content component of a file that has been deleted by the user but is still located on the device because it has not yet been overwritten by the device's operating system. (*Id.* at 5).

[5] "A CSAM series includes images of the same child(ren) posing in clothes, naked, and various stages of undress." (*Id.*)

Goddess;" and "9 year old Olivia Taylor." (*Id*. at 3, 5). Moreover, the forensic examination revealed that the Defendant took steps to delete the CSAM from his laptop, making it more difficult to capture the full scope of his online activities.

The Sixth Circuit has repeatedly emphasized that "[r]eceipt, distribution, and possession of child pornography are extremely dangerous to the community." *United States v. Hoilman*, 2023 WL 4074630, at * 2 (6th Cir. Apr. 24, 2023); quoting *United States v. Foster*, 2020 WL 6791572, at *3 (6th Cir. July 20, 2020) (order holding the same, noting that danger is pronounced "particularly because such activities are often hidden from a defendant's closest friends and family members"). "Each download and view of a child-pornographic image or film exacerbates the harm to the child involved in its production." *Foster*, 2020 WL 6791572, at *3 (internal quotation omitted).

The Sentencing Guidelines recommend a life sentence for the Court's consideration irrespective of the Defendant's possession of child pornography. Even if he did not have CSAM images on his laptop, the United States would submit that a Guidelines sentence is appropriate. However, he did possess such material, and consequently, it is a factor the Court should consider in fashioning appropriate conditions of supervision and in determining whether to vary from the Guidelines-recommended sentence.

## CONCLUSION

The Defendant has been convicted of conspiring to murder federal officials, solicitation to commit a crime of violence and influencing federal officials by threat. He targeted agents, officers, and employees of the FBI, Tennessee Bureau of Investigation, Tennessee Highway Patrol, Maryville Police Department, Blount County Sheriff's Office, and Clinton Police Department for assassination. These crimes are serious and undeniably dangerous. His history and characteristics, including his possession of child pornography, evince a lack of respect for the rule of law. The

Defendant is remorseless. He continues to believe he was justified in targeting East Tennessee law enforcement for assassination and was duty-bound as a self-proclaimed patriot to do so.

In this case, the Sentencing Guidelines have properly captured the relevant statutory factors under 18 U.S.C. § 3553(a). Accordingly, and for the above-stated reasons, the United States respectfully recommends the Court sentence the Defendant to life in prison, as provided for by the United States Sentencing Guidelines.

Respectfully submitted,

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

By: */s/ Casey T. Arrowood*
*/s/ Kyle J. Wilson*
Casey T. Arrowood
Kyle J. Wilson
Assistant United States Attorneys
TN BPR No. 038225
TN BPR No. 031844
800 Market Street, Suite 211
Knoxville, TN 37902
(865) 545-4167
Casey.Arrowood2@usdoj.gov
Kyle.Wilson@usdoj.gov
